UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAROL L. WILEY,

           Plaintiff,

v.                                        CASE No. 8:07-CV-1271-T-17TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is not adequately explained, and, in particular, fails to address significant items of evidence, I recommend that it be reversed and the matter remanded for further proceedings.

_____

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

I.

The plaintiff, who was forty-eight years old at the time of the administrative hearing and who has a high school education, has worked as a purchasing/receiving clerk and a receptionist (Tr. 49, 56, 376).[2] She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to three "blown discs" in her lower back, and diabetes (Tr. 55). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of degenerative disc disease, non-insulin dependent diabetes mellitus, and hypertension (Tr. 13). He concluded that these impairments limited the plaintiff to the full-range of light work (Tr. 14, 16). The law judge determined that this limitation prevented the plaintiff from performing past relevant work (Tr. 16). However, the law judge ruled that the medical-vocational guidelines directed a finding that the plaintiff was not

---

[2] The plaintiff stated on the disability form that she completed the eleventh grade of high school (Tr. 61). However, at the hearing she testified that she graduated from high school and completed one and one-half years of business school classes (Tr. 376).

-2-

disabled because there was other work in the national economy that the plaintiff could perform (Tr. 17). The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

## II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). 1382c(a)(3)(D). In this case, the plaintiff must show that she became disabled before her insured status expired on December 31, 1997, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is no such requirement for an award of supplemental security income.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The administrative law judge decided the plaintiff's claim under regulations designed to incorporate vocational factors into the determination of disability claims. See 20 C.F.R. 404.1501 et seq. Those regulations apply in cases where an individual's medical condition is severe enough to prevent her from returning to her former employment, but may not be severe enough to prevent her from engaging in other substantial gainful activity. In such cases, the regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2. If an individual's

situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled.  20 C.F.R. 404.1569.  If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only.  Id.

III.

The plaintiff contends, on a number of grounds, that the law judge's evaluation of the evidence was not done properly.  She has raised two interrelated contentions that do show reversible error in the law judge's decision.

The plaintiff contends that the law judge did not address properly all of her alleged impairments (Doc. 10, pp. 11-13).  The law judge found the plaintiff suffers from three severe impairments: degenerative disc disease, non-insulin dependent diabetes, and hypertension (Tr. 13).  The plaintiff argues that the law judge failed to address adequately her alleged impairments of migraine headaches, cervical radiculopathy, arthritis, neuropathies, and carpal tunnel syndrome  (Doc. 10, pp. 11-12).

The plaintiff's treating physicians have diagnosed her with headaches (Tr. 323, 327, 342-47, 349), cervical radiculopathy (Tr. 323, 342-

48, 437), and arthritis (Tr. 335, 338-41). Further, abnormal results from nerve conduction studies indicate the existence of carpal tunnel syndrome, neuropathies, and radiculopathies (Tr. 330, 331). Therefore, there is record evidence to support the existence of such impairments.

The law judge acknowledged in his decision the plaintiff's testimony that she suffers from debilitating migraine headaches four days a week and that she has carpal tunnel syndrome (Tr. 15, 385-86, 388-89). Further, the law judge noted the abnormal results of nerve conduction studies, which indicate bilateral carpal tunnel syndrome, neuropathies, and radiculopathies (Tr. 15). However, the law judge never specifically discussed these alleged impairments, including whether any of them constituted a severe impairment.

The law judge must state the weight accorded each item of impairment evidence and the reasons for his decision on that evidence. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). Accordingly, the law judge was required to explain his reasons for concluding that these documented impairments did not impose any functional limitations. He erred by failing to do that.

Further, it cannot be concluded at this point that the failure to evaluate all of the plaintiff's alleged impairments is harmless error, because a proper analysis could result in functional limitations greater than those found by the law judge. In that circumstance, the law judge's reliance upon the grids could be improper, as the plaintiff contends (Doc. 10, pp. 13-14).

The law judge found that the plaintiff could perform the full range of light work (Tr. 17). Based on this finding, he used the grids to determine that the plaintiff was not disabled (id.). However, if the law judge's finding that the plaintiff could perform a full range of light work is not correct, then he could not rely upon the grids, but should have employed a vocational expert. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Eleventh Circuit has said that "[e]xclusive reliance on the grids is not appropriate either when [a] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985). The plaintiff argues that the law judge failed to evaluate properly nonexertional impairments of pain, postural limitations, weakness, a lack of manual dexterity, and a mental

condition, which she contends significantly limit her basic work skills (see Doc. 10, p. 14). In this case, there is evidence of impairments that the law judge did not discuss, and those impairments could render erroneous the law judge's failure to use a vocational expert.

For example, the plaintiff, as indicated, testified that she suffered migraine headaches four days a week. Further, complaints of headaches are reflected in the notes of her treating neurologist. Accordingly, this condition, even if not totally incapacitating, could significantly limit the plaintiff's ability to work. This circumstance demonstrates that the law judge's failure to evaluate the allegations of headaches, coupled with the use of the grids, warrants a remand.

The same problem exists with respect to other impairments and their functional limitations. Two state agency reviewing physicians (Tr. 16) opined that, due to degenerative disc disease, the plaintiff may only occasionally climb, balance, stoop, kneel, crouch or crawl (Tr. 211, 245).[3] Although the law judge stated in his decision that he gave substantial weight to the opinions of these state agency reviewing physicians (Tr. 16), the law

---

[3]Postural limitations are considered nonexertional limitations. 20 C.F.R. Part 404, Subpart P. Appendix 2, §200.00(e).

judge implicitly disregarded their opinions concerning the plaintiff's postural limitations, as the limitations are not included in the plaintiff's residual functional capacity.   However, there is no discussion explaining why he discounted these opinions regarding the plaintiff's postural limitations.

The Commissioner does not argue that the law judge explained adequately his rejection of these physicians' opinions concerning the plaintiff's postural limitations; rather, he contends that such an error is harmless because the limitations do not significantly restrict the plaintiff's ability to perform the full range of light work (Doc. 13, p. 19).   However, postural limitations could well constitute nonexertional impairments that significantly limit basic work skills and thus render use of the grids inappropriate.    In fact, the Eleventh Circuit has stated that, when nonexertional impairments are present, the law judge cannot rely upon the grids, but is required to employ a vocational expert to determine whether the nonexertional impairments significantly limit basic work skills. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989).

Additionally, carpal tunnel syndrome and neuropathies (Tr. 330, 331) could cause nonexertional limitations, such as the plaintiff's alleged lack of manual dexterity and weakness, but the law judge did not discuss why he found that these impairments did not cause any functional limitations. The failure to evaluate these problems, as well as those previously discussed, precludes meaningful judicial review. Hudson v. Heckler, 755 F.2d 781, 785-86 (11th Cir. 1985).

In sum, the inadequate assessment of the plaintiff's limitations prevents a properly informed determination whether the use of the grids was correct. This deficiency warrants a remand.

The plaintiff also asserts other arguments. None establishes reversible error.

The plaintiff contends at length that the law judge did not give proper weight to the opinions of treating physicians (Doc. 10. pp. 2-11). Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not affording them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the

evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11ᵗʰ Cir. 1997).

The plaintiff focuses primarily upon the opinions of two treating physicians, Drs. Harish J. Patel and Michelle Spuza-Milord. With regard to the plaintiff's physical limitations, Dr. Patel opined in a Report of Physical Work-Related Impairments dated July 28, 2006, that the plaintiff is essentially incapacitated (Tr. 362-66).   Thus, Dr. Patel opines that the plaintiff cannot lift any weight; that she may sit, stand, and walk for only one hour each in a workday; that she cannot climb, stoop, crouch, kneel or crawl; that she should never handle objects and that she cannot grasp or engage in fine manipulation with her right hand (Tr. 364-66).  He also identifies several environmental restrictions (Tr. 366).  Dr. Patel does not specify the medical findings that support this assessment. except that he states that neck pain and bilateral carpal tunnel syndrome support the limitation on lifting (Tr. 364).

Dr. Spuza-Milord opined in a Report of Physical Work-Related Impairments dated August 3, 2006, limitations that are substantial, but less severe than those stated by Dr. Patel (Tr. 368-72).  She opined that the

-12-

plaintiff can occasionally lift up to ten pounds; that she can sit for two to

three hours, and stand and walk for up to one hour each in a workday; that

she can occasionally use her hands for grasping and fine manipulation; that

she should never balance, crouch, kneel or crawl; and that she can

occasionally reach, handle, feel, push and pull (Tr. 369-70).  Further, Dr.

Spuza-Milord stated that the plaintiff should avoid heights, moving

machinery, vibrations, chemicals, temperature extremes, and wetness and

dryness (Tr. 371).  Dr. Spuza-Milord opined that these limitations are caused

by arthritis, herniated discs, stenosis, radiculitis and diabetes (Tr. 369-71).

The law judge, however, provides good cause for rejecting these

opinions.  Thus, the law judge stated (Tr. 16):

> The treating physicians['] assessments of the
> claimants abilities (Exhibits 20F; 21F) are granted
> reduced weight because they are too severe for the
> medical evidence of record.  Additionally, the
> medical source statements from these treating
> sources appear to be based primarily on the
> subjective statements of the claimant.  The
> underlying documentation from the treating source
> reveals little, if any, objective observation of signs
> or symptoms or administration of any appropriate
> diagnostic examination along with a description of
> results.  Such lack of documentation fails to
> support the limitations provided in the medical
> source statement.

This explanation provides good cause for discounting the extreme opinions of Drs. Patel and Spuza-Milord. See Lewis v. Callahan, supra. 125 F.3d at 1440.

Further, as the Commissioner points out (Doc. 13, pp. 8-11), the law judge could reasonably conclude that neither the objective findings in the treating physicians' notes, nor any findings in any other medical record, indicate that the plaintiff is suffering from a totally disabling physical condition. For example, the law judge cites to a lumbar MRI and x-rays of the plaintiff's cervical spine which show a slight spondylosis of the cervical spine and minimal problems in the lumbar spine (Tr. 15, 108). Furthermore, the record contains clinical assessments, noted by the law judge, where the plaintiff demonstrated normal motor strength, normal gait, and the absence of atrophy or wasting (Tr. 15, 325-27).

As the law judge pointed out (Tr. 14), the treating physicians' opinions of disabling impairments are also inconsistent with the plaintiff's daily activities. Thus, the plaintiff reported to consultative psychologist Dr. David B. Kazar in 2004 that her daily activities comprised the following (Tr. 267):

> Ms. Wiley reports that she wakes around 7 o'clock
> in the morning, she gets the children ready for
> school, she goes to doctors appointments, she takes
> care of the house, she prepares food, she eats, she
> waits for the children to return home, she prepares
> dinner, she does crossword puzzles, she helps the
> children with their homework, she bathes [her]
> autistic son, she watches television. and she goes
> to be[d] between 10:00PM and 11:00PM.

Therefore, the law judge could have reasonably concluded that the plaintiff's

treating physicians' opinions of debilitating physical impairments are not

supported by the record.

The plaintiff argues that, by rejecting the treating physicians'

opinions, the law judge improperly substituted his opinion for those of

medical experts (Doc. 10, pp. 2, 3). The law judge did not substitute a

medical opinion but instead performed his duty to assess the evidence in

accordance with the regulations. 20 C.F.R. 404.1527, 416.927. Accordingly,

the plaintiff has failed to show that the law judge's rejection of the treating

physicians' opinions as to the plaintiff's physical limitations is erroneous.

The plaintiff also argues, unmeritoriously, that the law judge

failed to credit the treating physicians' opinions as to the plaintiff's mental

limitations (Doc. 10, pp. 4-6). In this regard, Dr. Patel opined that the

-15-

plaintiff was seriously limited in her ability to understand, remember, and carry out instructions; that she had no useful ability to follow work rules, relate to co-workers, deal with the public or interact with supervisors; and no useful ability to maintain attention or concentration (Tr. 363, 366).[10] There are no medical findings identified by Dr. Patel that support these opinions (id.).

Dr. Spuza-Milord opined that the plaintiff was seriously limited in her ability to use judgment, deal with work stress, and maintain attention/concentration (Tr. 371). She also fails to identify the medical findings that support her opinions (id., Tr. 372).

The law judge, in a cogent explanation, rejected the plaintiff's contention of a mental impairment and the treating physicians' opinions as to the plaintiff's mental limitations, stating (Tr. 13-14):

> Consultative psychological examination was performed in March 2004 by David Kazar, Ph. D. The claimant alleged depression, however, Dr. Kazar made no diagnosis other than pain disorder. The claimant displayed little evidence of sadness

---

[10]Dr. Patel's mental assessment, in addition to lacking an evidentiary basis, does not make sense. For example, Dr. Patel purportedly opined that the plaintiff has a poor ability to understand, remember, and carry out simple instructions, but she has a fair ability, *i.e.*, is more capable of, understanding and carrying out complex instructions (Tr. 363). This raises the issue of whether proper consideration was given to the questions.

> or dysphoria. She described a very active home life including cooking, cleaning, taking care of her disabled son. The claimant reported that she sought some kind of psychiatric care briefly during her divorce in 1992. She reported no history of inpatient services (Exhibit 11F). Treating physician (see below) reported in July 2006 that the claimant was mentally unable to perform work activities on a sustained basis (Exhibit 20F). The treating physician's statements regarding mental symptoms and resulting limitations are not generally credible, and are to be given little weight, because, regarding mental impairments, the claimant's relevant medical records show minimal, if any, medical history, including present and past complaints and treatment; objective signs or symptoms observed; administration of a diagnostic examination or description of results; diagnosis of nature and extent of disease; regular treatment; consultation with an appropriate specialist; evaluation of compliance, results of treatment and determination of additional treatment needs. State Agency reviewing consultant (Exhibit 10F) and consultative examiner (Exhibit 11F) have concluded that, based on the evidence of record, the claimant does not have a medically determinable mental impairment and the undersigned credits those assessments.

This explanation provides ample cause for rejecting the opinions of the treating physicians as to the plaintiff's mental limitations.

Further, the law judge's conclusion is reasonable. It is noted that neither of the treating physicians' specialty is psychiatry.[11]   Additionally, there is no diagnostic testing in the record, or treatment notes, which support the treating physicians' opinions as to the plaintiff's mental limitations.  In fact, Dr. Patel's opinion that the plaintiff has severe mental limitations is contradicted by his treatment notes, which indicate that the plaintiff is a cheerful, well-groomed female in no acute distress with good attention and concentration (Tr. 325, see also Tr. 342-51 (noting repeatedly that the plaintiff's memory is good and psychiatric condition is unremarkable)).[12] Therefore, the plaintiff's contention that the law judge improperly rejected the treating physicians' opinions regarding her mental limitations is baseless.

The plaintiff also contends in her treating physicians' argument that the law judge failed to state the weight given to the opinions of Dr. Christopher Davey, Dr. Clinton Davis, Dr. Charles Friedman and David

---

[11]The plaintiff states in her memorandum that Dr. Patel is a psychiatrist "by virtue of being a neurologist" (Doc. 10, p. 4; see also id., p. 6).  This is imprecise, as they are distinct specialities.  Although a neurologist may also train and practice as a psychiatrist, that does not appear to be the circumstance here, since there is no indication that Dr. Patel specializes in an area other than neurology.

[12]Additionally, the plaintiff's testimony at the hearing that she "ha[s] a little bit of depression and stress" (Tr. 382) does not support the treating physicians' opinions of debilitating mental impairments.

Kazar, Ph.D. (Doc. 10, pp. 9-10). With the exception of Dr. Friedman, the record does not reflect that any of these doctors are treating physicians.[13] In any event, the plaintiff has not cited to any evidence demonstrating that any of these physicians opine that the plaintiff is more functionally limited than the law judge found.[14]

Therefore, the plaintiff has not identified any reversible error with regard to the law judge's rejection of her treating physicians' opinions.

The plaintiff has also argued that the law judge erred in analyzing her credibility as to subjective complaints. This contention is problematic in light of the law judge's meager credibility determination. In light of the earlier conclusion that a remand is required, it is unnecessary to resolve whether a remand is warranted on this issue as well. Nevertheless, on remand, the Commissioner would be well-advised to provide a more thorough articulation of a credibility determination.

---

[13]Thus, with the exception of Dr. Friedman, the record reflects that she has been examined by these other physicians only once, and that she was examined by Drs. Davey and Kazar at the request of the state agency (Tr. 193, 266).

[14]Contrary to the plaintiff's argument, Dr. Kazar's assessment reflects the absence of a significant mental impairment, as he noted that she did not appear to be experiencing significant distress, had an active schedule, and he assigned her a Global Assessment of Functioning of 65 (Tr. 269), which indicates that the plaintiff is generally functioning pretty well. Diagnostic and Statistical Manual of Mental Disorders (4th ed. text rev.). p. 34.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

The plaintiff testified at the administrative hearing that she cannot work "at any kind of a job" due to back problems caused by a 1997 automobile accident in which her automobile was rear-ended (Tr. 380). The plaintiff said that she can sit for only forty-five minutes at a time, she cannot stand on her own, and she can walk at one time only one city block (Tr. 387-88). She further reported that she drops things ten to twelve times per day and normally takes a two-hour nap daily (Tr. 386, 388). The plaintiff added that she has migraine headaches four days a week, which require her to lie down with the lights off (Tr. 388-89). The plaintiff also testified that she has

four bad days per week, and on a really bad day she basically lies down (Tr.

389).

The law judge did not find the plaintiff's testimony fully

credible. In this regard, the law judge explained (Tr. 15, 16):

> After considering the evidence of record, the
> undersigned finds that the claimant's medically
> determinable impairments could reasonably be
> expected to produce the alleged symptoms, but that
> the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms
> are not entirely credible.
>
> ....
>
> Claimant's statements regarding symptoms and
> resulting limitations are generally credible, but not
> to the extent alleged that no work could be
> performed. Her statements regarding her activities
> of daily living show a higher residual functional
> capacity than alleged. Furthermore, her medical
> records show that treating physician(s) responded
> with limited and conservative treatment. Such
> treatment is inconsistent with the medical response
> that would be expected if the physician(s) found
> the symptoms and limitations to be as severe as
> reported by the claimant.

While this statement adequately justifies rejecting an allegation

that the plaintiff could perform no work, it does not explain why other alleged

limitations are discounted. For example, the law judge does not articulate to

-21-

what extent he found the allegation of migraine headaches credible. Did he find that she did not suffer headaches? Or that they were not migraine headaches, but common headaches that would not significantly limit the plaintiff's work capacity? Or that she only suffered migraine headaches infrequently? Particularly in light of the law judge's finding that the plaintiff's "statements regarding symptoms and resulting limitations are generally credible," a more detailed credibility determination would appear to be warranted.

It is noted, however, that the plaintiff unpersuasively argues that the law judge improperly relied on the plaintiff's daily activities to discount her credibility (Doc. 10, pp. 16-17). The regulations direct that a plaintiff's daily activities be considered with respect to complaints of pain. 20 C.F.R. 404.1529(a), (c)(3)(i); 416.929(a), (c)(3)(i).

The plaintiff's final argument is that the law judge used the wrong standard in determining whether the plaintiff could engage in substantial gainful activity (Doc. 10, pp. 3-4, 13). The plaintiff argues that the law judge based his disability determination on whether she was able to

work at all, when the proper standard is whether she could work eight hours a day, five days a week (id., pp. 3-4).

This contention is frivolous. The law judge's references to the pertinent regulations (Tr. 12) indicate that what was contemplated was "8 hours a day, for 5 days a week, or an equivalent work schedule." See SSR-96–8P, 1996 WL 374184 at *1. Moreover, the law judge's determination of the plaintiff's residual functional capacity demonstrates that he based his determination that she was not disabled on her ability to perform a full-time job (Tr. 14 (discussing her residual functional capacity to perform exertional activities in an "8 hour workday")).

IV.

For the foregoing reasons, the plaintiff has shown that, in some respects, the decision of the Commissioner is unacceptably flawed. I, therefore, recommend that the decision be reversed and the matter remanded for further consideration.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: JUNE 5, 2008

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).